UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DAVID WATERS | : | PRISONER |
| *Plaintiff,* | : | 3:03CV909(JBA)(JGM) |
|  | : |  |
| VS. | : |  |
|  | : |  |
| DISCIPLINARY INV. FRED MILLER, ET AL. | : |  |
| *Defendants.* | : | MARCH 9, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS

The *pro se* inmate plaintiff sues the State of Connecticut Department of Correction defendants pursuant to Title 42 USC § 1983, apparently alleging that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, the plaintiff seems to contest the issuance of a "false" disciplinary report to the plaintiff inmate while he was confined at MacDougall Walker Correctional Institution by the defendant Disciplinary Investigator Fred Miller, and the failure to investigate the issuance of the aforementioned report by the defendant Grievance Coordinator John Breedlove. The plaintiff seems to sue the defendants in their individual capacities. The plaintiff appears to seek compensatory money damages.

The defendants, Disciplinary Investigator Fred Miller and Grievance Coordinator John Breedlove respectfully submit this memorandum of law in support of their motion to dismiss the plaintiff's complaint on the following grounds:

I.  The plaintiff has failed to state a claim upon which relief can be granted, since the plaintiff has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.

II.  The plaintiff has failed to state a claim upon which relief can be granted, since the plaintiff has no constitutional right to an investigation.

III.  The plaintiff has failed to state a claim upon which relief can be granted, since the plaintiff has not alleged a deprivation with regard to prison conditions that gives rise to a due process violation.

IV.  This action is barred by the doctrine of qualified immunity.

V.  The plaintiff has failed to state a claim pursuant to the Prison Litigation Reform Act under 42 U.S.C. § 1997e(e) upon which relief can be granted, since the plaintiff did not allege a physical injury.

## ARGUMENT

**I.  STANDARD OF REVIEW**

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).  The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Younger v. Chernovetz*, 792 F.Supp. 173, 174 (D.Conn. 1992) (quoting *Ryder Energy Distribution v. Merrill Lynch commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the

allegations, it is clear that no relief can be granted. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Understandably, the Court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). *But see, Davidson v. Flynn,* 32 F.3d 27 (2d Cir. 1994) (experienced *pro se* litigant familiar with the requirements of the legal system may be held to a higher standard). This well-established canon does not, however, relieve a *pro se* litigant of his obligation to set forth a "short and plain" statement of his claims. *See* Federal Rules of Civil Procedure 8(a)(2); *Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988). Even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief. *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986).

In the Second Circuit, it is well-established that mere "conclusory allegation[s] without evidentiary support or allegations of particularized incidents, [do] not state a valid claim." *Brown v. City of Oneonta,* 235 F.3d 769, 773 (2d Cir. 2000). *Hall v. Dworkin,* 824 F. Supp. 1403, 1412 (N.D.N.Y. 1993) (complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions"), *citing Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987). *Cf. Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1972) ("a complaint consisting of nothing more than naked assertions fails to state a claim"). Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d

Cir. 1988). *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed). Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

In applying supplemental jurisdiction over pendent state law claims, federal courts must apply state substantive law. *See, e.g., Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992). Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 884 (2d Cir. 1995).

II. **THE PLAINTIFF HAS NO CONSTITUTIONALLY GUARANTEED IMMUNITY FROM BEING FALSELY OR WRONGLY ACCUSED OF CONDUCT WHICH MAY RESULT IN THE DEPRIVATION OF A PROTECTED LIBERTY INTEREST**

The plaintiff appears to allege that defendant Miller issued a false disciplinary report. The plaintiff does not allege that he was denied notice of a hearing or a hearing

or even the opportunity to be present at a hearing concerning the underlying facts of the disciplinary report. The plaintiff does not allege that he did not receive all the process due regarding the issuance of the disciplinary report. He merely alleges that a false report was issued. Furthermore, it should be noted, that as a result of the issuance of that report the plaintiff was penalized with fifteen days punitive segregation, sixty days loss of visitation, and sixty days loss of commissary. Complaint, Exhibit 2.

It is settled in the Second Circuit that false charges do not per se violate due process. There is no violation of procedural due process if the inmate receives all the process due – in this context, a *Wolff* hearing. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). "There must be more [than false charges], such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schneider*, 105 F.3d 857, 865 (2d Cir. 1997) citing *Freeman v. Rideout* and *Franco v. Kelly*, 854 F.2d 584, 588-590 (2d Cir. 1988). The *Freeman* Court explained:

> The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law. As is shown by the facts of this case, before Freeman could be placed in segregation, due process required that he be granted a hearing on whatever charges had been made against him. See e.g., *Baxter v. Palmigiano*, 425 U.S. 308, 323, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976); Wolff v. McDonnell, 418 U.S. 539, 571 n. 19, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); Sher v. Coughlin, 739 F. 2d 77, 81 (2d Cir. 1984).*

*Id.* at 951. In *Freeman*, although the inmate was found guilty at the hearing, he received all the protections due.

Thus, the claim pending against defendant Miller should be dismissed, since the issuance of a false disciplinary report is not a violation of the Due Process Clause of the Fourteenth Amendment.

### III. THE PLAINTIFF HAS NO CONSTITUTIONAL RIGHT TO AN INVESTIGATION

The plaintiff alleges that defendant Breedlove failed to conduct an investigation into the disciplinary report issued by defendant Miller on July 12, 2002, because Breedlove relied on the investigation performed by Miller and did not conduct his own investigation by interviewing the plaintiff or other witnesses. The plaintiff appears to contend that the actions of defendant Breedlove violated his rights under the Due Process Clause of the Fourteenth Amendment.

The Constitution does not provide an individual a cause of action for the failure of the police to investigate a crime. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "in American jurisprudence...a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (holding that victims of a crime have no constitutional right to have the perpetrator criminally prosecuted); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (holding that police officer had no constitutional duty to investigate plaintiff's assault charge), *aff'd*, 23 F.3d 410 (7th Cir. 1994). Thus, the apparent assertion that defendant Breedlove violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by failing to conduct an investigation into the disciplinary report issued by defendant Miller on July 12, 2002 fails to state a claim cognizable in § 1983 action.

The Prison Litigation Reform Act amended 28 U.S.C. § 1915 to provide that the court "shall dismiss [a] case at any time if the court determines that...the action...fails to state a claim on which relief may be granted..." 28 U.S.C. § 1915(e)(2)(B)(ii) (as amended by Prison Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321, April 26, 1996).

Thus, the claim pending against defendant Breedlove should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. THE PLAINTIFF HAS FAILED TO ALLEGE A DEPRIVATION WITH REGARD TO PRISON CONDITIONS THAT GIVES RISE TO A DUE PROCESS VIOLATION

The plaintiff appears to contend solely that the issuance of the alleged false disciplinary report by defendant Miller and the failure to investigate that report by defendant Breedlove resulted in the plaintiff's loss of a liberty interest, namely the defendant was disciplined with fifteen days punitive segregation, sixty days loss of visitation, and sixty days loss of commissary. Complaint, Exhibit 2.

The Supreme Court, the ultimate authority on constitutional issues, dictated the standard to be applied in determining when a liberty interest sufficient to invoke due process exists in a deprivation alleged with regard to challenged prison conditions. *Sandin v. Conner*, 515 U.S. 472 (1995). The Court held in *Sandin* that challenged prison conditions cannot give rise to a due process violation unless those conditions constitute "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The *Sandin* Court explained:

> The punishment of incarcerated prisoners...effectuates prison management and prisoner rehabilitative goals. See *State v. Alvey, 67 Haw. 49, 55, 678 P.2d 5, 9 (1984)*. Admittedly, prisoners do not shed all constitutional rights at the prison gate, *Wolff, 418 U.S. at 555*, but "'lawful

> incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Jones, 433 U.S. at 125,* quoting *Price v. Johnston, 334 U.S. 266, 285, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948).* Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.
>
> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence...the State's actions in placing him there [segregated confinement] for 30 days did not work a major disruption in his environment.

*Id.* at 485-486.

Thus, the plaintiff's claims should be dismissed, since the plaintiff was only disciplined with fifteen days of punitive segregation, which does not constitute a deprivation that gives rise to a due process violation.

### V.     THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS AS ALLEGED IN THE PLAINTIFF'S COMPLAINT.

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998).  The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739).  *See also, Glass v. Mayas,* 984 F.2d

55, 57 (2d Cir. 1993). The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted). The rule serves to protect government officials from charges that they knowingly violated standards that were in fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533 U.S. at 201. As a result, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id., citing Hunter v. Bryant,* 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. According to *Saucier*, a court required to rule upon the qualified immunity issue must first consider this threshold question: Taken in the light most favorable to the party

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Id., citing Siegert v. Gilley,* 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991). As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

*Id.,* 533 U.S. at 201.

If no constitutional right would have been violated were the allegations established, *Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. *Id.,* 501 U.S. at 201. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable. As more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in

> question has been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.,* 536 U.S. at 739, (internal citations and quotations omitted).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz, supra.*  If the law did not put the officer on notice that his conduct would be clearly unlawful, judgment based on qualified immunity is appropriate.  *Id.*

Of course, there is no definitive guide as to when a right is clearly established.  Thus, while the defendants do not question the existence of a inmate's Fourteenth Amendment right to due process generally,

> the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract ..., but whether the defendants should have known that the specific actions complained of violated  ... [that right]. Such an inquiry requires that a court define the constitutional right with some specificity.  If the right is defined too broadly, plaintiff would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Lewis v. Cowen,* 165 F.3d 154, 167 (2d Cir. 1999) (internal quotations and citations omitted).  In the absence of controlling precedent, decisions from other circuits must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.  *Marsh v. Arn,* 937 F.2d 1056, 1068 (6th Cir. 1991) (citations omitted).[1]

---

[1] As stated by the Second Circuit in *Poe v. Leonard,* 282 F.3d 123 (2nd Cir. 2002), "[i]t is unclear the extent to which we may rely on the case law of other circuits to determine whether the law was clearly established."  *Id.,* 282 F.3d at 141, n. 15.  Accordingly, in those cases where the Second Circuit has relied upon the law established in other circuits as a guide for its own legal analysis, it has done so only where our

Assuming that the factual allegations in a particular case demonstrate that there exists an underlying constitutional right, and that this right was clearly established in a particularized sense at the time the defendants acted, the final inquiry which must be undertaken in the qualified immunity analysis is the question of whether, despite the nature of the constitutional right at issue, a reasonable officer could have been mistaken as to the legal constraints upon his conduct. If such a mistake as to the legal constraints upon his conduct was objectively reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [governmental] conduct. It is sometimes difficult for an [official] to determine how the relevant legal doctrine [...] will apply to the factual situation the [official] confronts. If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to the immunity defense.

*Saucier v. Katz, supra. See also, Malley v. Briggs,* 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986) (qualified immunity leaves ample room for mistaken judgments). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law, or those who act where "the law clearly proscribed the actions" taken." *Saucier, supra,* (quoting *Anderson v. Creighton,* 483 U.S. at 638-39). This aspect of the doctrine of qualified immunity recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen. Such mistakes alone do not open officers to personal liability. *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S. Ct. 51 (1998); *accord, Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) ( indicating that

---

precedent had foreshadowed the development of the relevant standards that other circuits had clearly established. *Id., citing Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997).

qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty information, or contextual exigencies). Accordingly,

> In cases involving the conduct of police officials, … even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act . . . . The objective reasonableness test is met - and the defendant is entitled to qualified immunity - if officers of reasonable competence could disagree on the legality of the defendant's actions . . . . In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene . . . . [W]hen the factual record is not in serious dispute . . . [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

*Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted); *accord, Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those cases where the facts concerning the availability of the defense are undisputed).

Regarding the plaintiff's apparent contentions that he was denied his Fourteenth Amendment Due Process Rights, because he was issued an alleged false disciplinary report by defendant Miller and the report was not investigated by defendant Breedlove, the law appears to be clearly established, as the foregoing discussions regarding no constitutional immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest, no constitutional right to an investigation, and

the failure of the plaintiff to allege a deprivation with regard to a prison condition that gives rise to a due process violation demonstrate.

Thus, analysis of the plaintiff's apparent allegations coupled with an analysis of the relevant law establishes that the defendants are entitled to qualified immunity for their actions.

VI. **SINCE THE PLAINTIFF DID NOT ALLEGE PHYSICAL INJURY, HIS CLAIM FOR COMPENSATORY DAMAGES IS PRECLUDED PURSUANT TO THE PRISON LITIGATION REFORM ACT UNDER 42 U.S.C. § 1997e(e)**

The plaintiff does not appear to allege that he was ever physically harmed in any way by either any employee of the Department of Correction or any other inmate while the plaintiff was confined to MacDougall Walker Correctional Institution. The plaintiff solely complains about the issuance of a false disciplinary report by defendant Miller and the failure to investigate the issuance of that report by defendant Breedlove.

The Prison Litigation Reform Act provides:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The Second Circuit has held that this provision does apply to constitutional claims. *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2001). In its *Thompson* decision, the Second Circuit followed some other circuits in holding that this prohibition extends only to claims for compensatory damages, and does not extend to claims for punitive or nominal damages, or to claims for declaratory or injunctive relief. *Id.* at 418. According to the law as interpreted by the Second Circuit, then, any of the plaintiff's claims for compensatory damages regarding the defendants' issuance of an alleged false disciplinary report and failure to investigate that report are subject to

dismissal under § 1197e(e).  The plaintiff in this case does not appear to allege nominal or punitive damages.

Thus, the defendants move to dismiss the plaintiff's claims for compensatory damages regarding the issuance of a false disciplinary report and the failure to investigate that report pursuant to § 1197e(e).

## **CONCLUSION**

Wherefore, all the foregoing reasons, the defendants respectfully seek dismissal of this matter.

DEFENDANTS,
Disciplinary Inv. Fred Miller, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____
Kathleen A. Keating
Assistant Attorney General
Federal Bar No. ct25247
110 Sherman Street
Hartford, CT  06105
Telephone:  (860) 808-5450
E-mail: kathleen.keating@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 9th day of March, 2004, to:

David Waters, Inmate No. 141241
Garner Correctional Institution
50 Nunnawauk Rd., P.O. Box 5500
Newtown, CT  06470

_____
Kathleen A. Keating
Assistant Attorney General